**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LOUIS YOELIN,            )
                Plaintiff,    )
                       )
v.                       )    Case No.
                       )
ELMHURST UNIVERSITY,     )    **JURY TRIAL DEMANDED**
JAMES HILE,              )
             Defendants.    )

## COMPLAINT AT LAW

Now comes the Plaintiff, Louis Yoelin ("Yoelin", or "Plaintiff") by and through

undersigned counsel, and complaining of the Defendants, Elmhurst University and James Hile

("Hile") states as follows:

## NATURE OF THE ACTION

This is an action for declaratory and injunctive relief and for damages against the

defendants to redress deprivation of the Plaintiff's rights secured by Title VI of the Civil Rights

Act of 1964, as amended (42 U.S.C. § 2000(d) *et. seq.*) ("Title VI"), Title VII of the Civil Rights

Act of 1964, as amended (42. U.S.C. § 2000(e) *et. seq.*) ("Title VII"), and under Section 1 of the

Civil Rights Act of 1866, as amended (42 U.S.C. § 1981 *et. seq.*) ("Section 1981").

## PARTIES

1.     Plaintiff is an adult Jewish male and practicing member of the Jewish faith who

resides in the territorial jurisdiction of the district court. Plaintiff is an accomplished songwriter,

composer, and producer. His music has been featured over 100 times in television shows, films,

and commercials such as "How I Met Your Mother," "Criminal Minds," "Keeping Up with the

Kardashians," and "The Young and the Restless," among others.

1

2.      Elmhurst University is an Illinois Corporation and recipient of federal financial assistance which maintains its principal place of business in Elmhurst, Illinois.

3.      At all relevant times, Elmhurst University employed more than fifteen (15) employees.

4.      At all relevant times, Elmhurst University operated within the territorial jurisdiction of the District Court.

5.      The Defendant, James Hile, is an adult Caucasian male who upon information and belief practices a religion other than Judaism and was appointed as acting chair of the music department at Elmhurst University on or about July 2022.

## JURISDICTION

6.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, as the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7.      All jurisdictional prerequisites to a lawsuit have been met, to wit:

a.      On August 21, 2023, Plaintiff filed a charge of discrimination alleging discrimination on the basis of race, religion, and retaliation which was perfected by the Equal Employment Opportunity Commission ("EEOC") and through a work sharing agreement between the Commission and the Illinois Department of Human Rights ("IDHR") was cross-filed and perfected at both agencies;

b.      The charge was filed at the EEOC. *See Exhibit A.*

2

     c.     The charge was perfected by the EEOC and thus was perfected at both the IDHR and the EEOC. *See Exhibit A.*

     d.     The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination.

     e.     The charge was assigned EEOC Charge No. 440-2023-09498;

     f.     Plaintiff received a Right-to-Sue letter from the EEOC dated November 27, 2023. *See Exhibit B.*

     g.     This lawsuit is being filed within 90 days of the date of receipt of the Right-to-Sue letter. *See Exhibit B.*

## VENUE

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Elmhurst University is a corporation operating its principal place of business in this Court's jurisdictional district and all events or omissions giving rise to Plaintiff's claims occurred here in this jurisdictional district.

## FACTS

9.     Elmhurst University is a private corporation, are and were, at all times relevant, "employers" and/or "covered entities" within the meaning of Title VII of the Civil Rights Act of 1964.

10.     Elmhurst University, at all times relevant, are and were recipients of federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964 through the form of grants, loans, and donations of federal funds.

3

11.     Plaintiff was employed by Elmhurst University as an Adjunct Professor of Music Theory and Composition beginning on or about August 2012. Plaintiff's responsibilities included, without limitation, individualized music lessons with students taking courses in the department, alongside the teaching of more "traditionally structured" courses such as "Songwriting" and "Film Scoring."

12.     Throughout Plaintiff's 11 years of employment with Elmhurst University, he received exclusively exemplary performance reviews from supervisors and faculty and was well-respected and frequently praised amongst his students. Plaintiff was frequently given new responsibilities to match his exemplary performance, such as being permitted to teach additional classes, beginning to teach a "Music Business" course on or about August of 2019.

13.     On or about June of 2022, Elmhurst University hired James Hile ("Hile") to work as the acting chair of the music department at the university alongside another new hire, Courtney Miller ("Miller") who was employed as the Dean of the Fine Arts Department.

14.     Shortly following the hiring of Hile and Miller, Plaintiff, as their new subordinate, e-mailed both of them offering congratulations and requesting a meeting with the two to become acquainted and determine how Plaintiff could best help the school given the university's transition from a "college" to a "university" and the structural changes that accompanied said transition.

15.     In response to Plaintiff's e-mail, Hile aggressively replied expressing anger that Plaintiff "went over his head" to speak with Miller. *See Exhibit C.*

16.     Plaintiff reported the unnecessary and harassing behavior of Hile to the Human Relations Department at Elmhurst University. Plaintiff expressed at the time of his report that he

4

felt that Hile's aggression towards him was pretextual and as a result of Plaintiff's self-described "obvious Jewish name and appearance." Upon information and belief, no action was taken by Elmhurst University regarding this report, and it remains in Plaintiff's personnel file.

17.     Plaintiff engages in public activism and volunteering work with organizations such as "Stop Online Antisemitism," a group dedicated to speaking out against and eliminating antisemitic hate speech and countering antisemitic hate groups across the country. Plaintiff began working with the non-profit organization in August of 2022.

18.     Over the course of Plaintiff's employment, as well as subsequent to his termination, he contacted the Department of Diversity, Equity, and Inclusion at Elmhurst University to inquire as to the Department's efforts to combat antisemitism on campus. Each and every message to the department was left unanswered.

19.     As a part of Plaintiff's volunteering work, Plaintiff would frequently engage with and discredit antisemites and antisemitic rhetoric in public forums such as social media websites.

20.     Plaintiff's volunteer work, along with his Jewish heritage and faith, caused him to become targeted by various individuals with ties to antisemitic hate groups that Plaintiff had previously spoken out against.

21.     On or about March, 2023, an anonymous user of the website commonly known as Facebook, displeased with Plaintiff's volunteering work and activism against antisemitism and antisemitic rhetoric, publicly posted that the user intended to contact Elmhurst University in order to report Plaintiff and "to get him into trouble." *See Exhibit D.*

22.     Upon information and belief, shortly thereafter, anonymous individuals began contacting James Hile and other faculty members at Elmhurst University to provide false,

defamatory, racist, antisemitic, or otherwise harmful statements about Plaintiff with the intent of causing adverse employment action against him. Plaintiff was never notified of the contents of these messages.

23.     In May of 2023, Plaintiff received an exemplary performance review from David Devasto, Head of the Music Composition and Theory Department at Elmhurst University, who raved about his excellence and success as a teacher, asked him to develop a new songwriting class, and requested that he begin teaching additional music theory classes. *See Group Exhibit E.*

24.     In May of 2023, One of Plaintiff's students was accepted into a graduate program for music at New York University, widely considered one of the most prestigious music programs nationwide. Plaintiff's student credited Plaintiff as one of his greatest influences in his senior project's "liner notes," the writings found within the sleeves of record albums. *See Exhibit F.*

25.     In June of 2023, Plaintiff received an unexpected e-mail from James Hile notifying him that his employment had been terminated at Elmhurst University. *See Exhibit G.*

26.     Plaintiff replied to the e-mail expressing shock and asking Hile if he had received emails from individuals reporting him for fighting antisemitism over the last semester. Hile responded that he had indeed received those reports. Hile refused to provide copies of those e-mails and his responses thereto to Plaintiff.

27.     In June of 2023, Plaintiff began seeking mental health services for the emotional distress he endured as a result of the discriminatory actions taken against him.

28.     In August of 2023, Elmhurst University hired a replacement for Plaintiff's position, Joshua Rodriguez ("Rodriguez"). Upon information and belief, Rodriguez is of a race

other than Jewish and practices a faith other than Judaism. Upon information and belief, Rodriguez had no professional experience in songwriting or film scoring, and no experience in teaching songwriting or film scoring, at the time of his hire. Rodriguez was assigned to teach the very same courses previously assigned to Plaintiff. *See Exhibit H.*

29.    After Plaintiff mentioned that Rodriguez had no relevant experience on his resume publicly posted on his website (*www.joshrodriguezmusic.com*) in Plaintiff's Reply to Respondent's Position Statement during the EEOC investigatory process (*See Exhibit I*), Rodriguez removed his resume from his website, which upon information and belief was done at the direction of Elmhurst University. Rodriguez's public website still contains a biography discussing his accolades which makes no reference to any relevant experience, either professionally or in teaching, with the subject matter of the particular courses which Plaintiff was previously assigned. *See Exhibit J.*

30.    Respondent's characterization of Plaintiff's speaking out against antisemitism as "aggressive" in its Position Statement (*See Exhibit K*) is further demonstrative of a culture of antisemitism and antisemitic rhetoric accepted by and flourishing within Elmhurst University.

31.    Upon information and belief, Plaintiff was the only Jewish person employed in the Music Department at Elmhurst University.

32.    Upon information and belief, Plaintiff was the only person terminated from the faculty of the music department at Elmhurst University in 2023. To the contrary, the music department at Elmhurst University has significantly expanded since Plaintiff's termination.

7

34.     Following Plaintiff's initial contact with the EEOC, and Plaintiff's bringing to light the lack of qualifications held by his replacement, Respondent chose to remove several of the courses previously taught by Plaintiff entirely.

35.     That Elmhurst University's termination of Plaintiff was pretextual and in retaliation for Plaintiff's opposition to Elmhurst University's Actions described above.

36.     When Plaintiff complained to supervisors and HR, Elmhurst University failed to promptly remedy Plaintiff's complaints.

37.     Elmhurst University did not take adequate remedial steps to ensure that the ongoing harassing workplace environment ceased prior to Plaintiff's termination.

38.     Despite Plaintiff's complaints, Plaintiff continued to endure a harassing and hostile workplace environment up to and including the termination of his employment.

## COUNT I – TITLE VII RELIGIOUS DISCRIMINATION (ELMHURST UNIVERSITY)

39.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

40.     This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

41.     Plaintiff has been discriminated against in the workplace based on his religion, Jewish.

42.     The aforementioned conduct constitutes a violation of Title VII of the Civil Rights Act of 1964 based on religious discrimination.

43.     As a result of the foregoing, Plaintiff has suffered damages.

## COUNT II – TITLE VII RACE DISCRIMINATION (ELMHURST UNIVERSITY)

44.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

45.     This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

46.     Plaintiff has been discriminated against in the workplace based on his race, Jewish.

47.     The aforementioned conduct constitutes a violation of Title VII of the Civil Rights Act of 1964 based on race discrimination.

48.     As a result of the foregoing, Plaintiff has suffered damages.

## COUNT III – TITLE VII HOSTILE WORK ENVIRONMENT - RELIGION (ELMURST UNIVERSITY)

49.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

50.     This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

51.     Plaintiff has been discriminated against in the workplace based on his religion, Jewish.

50.     Elmhurst University knew or should have known of the harassment and failed to take prompt remedial action. Plaintiff complained about the widespread discriminatory and harassing conduct he faced at Elmhurst University, but his complaints were unanswered.

52.     Elmhurst University, by and through its supervisors, human resources department and managers acquiesced, turned a blind eye, and did not effectively deter, investigate, prevent, or take appropriate remedial action regarding the ongoing discrimination and harassment.

53.     The aforementioned conduct constitutes a violation of Title VII of the Civil Rights Act of 1964 based on religious discrimination due to a hostile work environment.

54.     As a result of the foregoing, Plaintiff has suffered damages.

## COUNT IV – TITLE VII HOSTILE WORK ENVIRONMENT – RACE
## (ELMURST UNIVERSITY)

55.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

56.     This claim is brought under Title VII, 42 U.S.C. § 2000e, *et seq.*

57.     Plaintiff has been discriminated against in the workplace based on his race, Jewish.

58.     Elmhurst University knew or should have known of the harassment and failed to take prompt remedial action. Plaintiff complained about the widespread discriminatory and harassing conduct he faced at Elmhurst University, but his complaints were unanswered.

59.     Elmhurst University, by and through its supervisors, human resources department and managers acquiesced, turned a blind eye, and did not effectively deter, investigate, prevent, or take appropriate remedial action regarding the ongoing discrimination and harassment.

60.     The aforementioned conduct constitutes a violation of Title VII of the Civil Rights Act of 1964 based on race discrimination due to a hostile work environment.

10

61.  As a result of the foregoing, Plaintiff has suffered damages.

## COUNT V – TITLE VII RETALIATION (ELMHURST UNIVERSITY)

62.  Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

63.  When Plaintiff complained about harassment and discrimination, he was threatened with retaliation and retaliated against, including but not limited to as set forth elsewhere in this Complaint and in Plaintiff's EEOC charge.

64.  As a result of this conduct, Plaintiff has suffered damages.

## COUNT VI – TITLE VI RACE DISCRIMINATION (ELMHURST UNIVERSITY)

65.  Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

66.  This claim is brought under Title VI, 42 U.S.C. § 2000d, *et seq.*

67.  Plaintiff has been discriminated against in the workplace based on his race, Jewish.

68.  Elmhurst University is a recipient of federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964.

69.  The aforementioned conduct constitutes a violation of Title VI of the Civil Rights Act of 1964 based on race discrimination.

## COUNT VII – TITLE VI RETALIATION (ELMHURST UNIVERSITY)

70.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

71.     This claim is brought under Title VI, 42 U.S.C. § 2000d, *et seq.*

72.     Elmhurst is a recipient of federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964.

73.     When Plaintiff complained about harassment and discrimination, he was threatened with retaliation and retaliated against, including but not limited to as set forth elsewhere in this Complaint and in Plaintiff's EEOC charge.

74.     As a result of this conduct, Plaintiff has suffered damages.

## COUNT VIII – SECTION 1981 RACE DISCRIMINATION (ALL DEFENDANTS)

75.     Plaintiff realleges and reincorporates each preceding paragraph as if specifically set forth herein.

76.     42 U.S.C. §1981 provides that all persons shall be entitled to the same rights to make and enforce contracts and prohibits private actors from discriminating on the basis of race against those seeking to make and enforce contracts. *See, e.g., Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006) ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship.").

77.     Plaintiff is a member of a protected class on the basis of race, Jewish.

12

78.     Defendants intentionally discriminated against Plaintiff as described above, including but not limited to considering his race while reviewing his contract renewal and determining whether Elmhurst would extend a contract to Plaintiff on the basis of his race.

79.     Defendants' actions were taken with a willful and wanton disregard for Plaintiff's rights under 42 U.S.C. § 1981.

80.     As a direct and proximate cause of said unlawful intentional discrimination Plaintiff has suffered damages.

## COUNT IX – SECTION 1981 RETALIATION (ALL DEFENDANTS)

81.     Plaintiff adopts, realleges, and incorporates by reference all preceding paragraphs as if specifically set forth herein.

82.     The protections granted by 42 U.S.C. § 1981 extend to retaliation claims. *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442 (2008).

83.     Plaintiff is a member of a protected class on the basis of race, Jewish.

84.     When Plaintiff complained about harassment and discrimination, he was threatened with retaliation and retaliated against, including but not limited to as set forth elsewhere in this Complaint and in Plaintiff's EEOC charge.

85.     As a result of this conduct, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.   Find that Elmhurst University discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.   Find that Defendants intentionally discriminated against Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights in violation of Section 1981 of the Civil Rights Act of 1866;

C.   Find that Elmhurst University discriminated against Plaintiff, in violation of Title VI of the Civil Rights Act of 1964;

D.   Award compensatory and punitive damages to the maximum amount provided by law;

E.   Award attorney's fees, expert witness fees, and costs as provided by law;

F.   Enjoining Defendant Elmhurst University from engaging in the unlawful employment practices described above;

G.   Retain jurisdiction over this action to assure full compliance with the Order of this Court and applicable law; and

H.   Grant such additional relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

/s/Marc P. Trent
One of Plaintiff's Attorneys

/s/ Daniel Nikolic
One of Plaintiff's Attorneys

14

**TRENT LAW FIRM, P.C.**
**Marc P. Trent #6324928**
**Daniel Nikolic #6205792**
2 TransAm Plaza Drive, Suite 300
Oakbrook Terrace, IL 60181
(630) 682-3100
*service@trentlawfirm.com*

Vinesign Document ID: 8E04D7CD-742F-47A0-A1A6-FB02FEEF397E

EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency( | **A**<br>ALL-STATE LEGAL |
|---|---|---|---|

| Illinois Department of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.)<br>Lou Yoelin | Home Phone (Incl. Area Code)<br>(708) 224-6176 | Date of Birth<br>09-15-1978 |
|---|---|---|

| Street Address<br>1115 Kemman Avenue, La Grange Park, Illinois 60526 | City, State and ZIP Code | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name<br>Elmhurst University | No. Employees, Members<br>300 + | Phone No. (Incl. Area Code)<br>(630) 617-3400 |
|---|---|---|

| Street Address<br>190 Prospect Avenue, Elmhurst, Illinois 60126 | City, State and ZIP Code | |
|---|---|---|

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Jun 1, 2023  Latest: Jun 23, 2023

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

My name is Lou Yoelin and I was previously employed as an Adjunct Professor of music theory and composition at Elmhurst University for approximately 11 years. During my career with Elmhurst, I received exemplary reviews from both the Chair of the Music Department, as well as my students. As a result, my annual teaching contract was regularly renewed each year. However, after 11 years of teaching, my position was eliminated and replaced by another professor with virtually little to no prior experience in music. At the time that Elmhurst notified me of my contract non-renewal, I was also significantly involved in volunteer work that focused its efforts on fighting antisemitism online. In a backlash response to my active participation in such antisemitic advocacy, I experienced online harassment via social media from various hate groups.

The antisemitic harassment and slanderous messages directed at me were further shared with my direct supervisor at Elmhurst University, James Hile. These messages were sent to Mr. Hile via email message, in or about late June 2023, for the purpose of jeopardizing my employment, all on account of the fact that I am Jewish and actively defended my religion. I was notified that Mr. Hile had received these messages about me as he notified me of the same via email message. Shortly thereafter, I learned that my teaching contract with Elmhurst for the upcoming academic year was not being renewed. As a result of the foregoing, I believe that I have been subject to religious discrimination pursuant to Title VII of the Civil Rights Act of 1964. As a result, I presently seek all available relief under Title VII including reinstatement, back pay, back benefits, compensatory damages, attorneys' fees and all other relief available.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 08/21/2023 *Lou Yoelin*<br>Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

The signed document can be validated at https://app.vinesign.com/Verify

EEOC Form 5 (11/09)

| **C**HARGE OF **D**ISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☐ EEOC | |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | |
| _____     _____ Date                    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Print Form

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)



**To:** Lou Yoelin
c/o Disparti Law Group, P.A.
Nicollette Haines
121 W Wacker Dr., Ste 2300
Chicago IL 60601

Charge No: 440-2023-09498

EEOC Representative and email:     EVA BARAN
Investigator
eva.baran@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2023-09498.

On behalf of the Commission,

Digitally Signed By: Diane I. Smason
11/27/2023
Diane I. Smason
Acting District Director

**Cc:** Elmhurst University
c/o James Fitzgerald

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 440-2023-09498 to the District Director at Diane I. Smason, 230 S Dearborn Street Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2023-09498 to the District Director at Diane I. Smason, 230 S Dearborn Street Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**To:** Louis Yoelin <louis.yoelin@elmhurst.edu>
**Subject:** Meeting



Lou,

I am going to suggest you meet with me before you meet with Courtney Miller, or that you cancel your meeting with her altogether.

I don't know what it is you want to talk about, but I can tell you there was an incident with a new faculty member this last semester going straight to the university President before talking with Pete. That incident and not following chain of command does not work well within the university and did not reflect well on music department

I am in all day tomorrow and all next week and my schedule is pretty open. Would be glad to Zoom with you if that is easier for you.

Thanks!

Jim



ALL-STATE LEGAL®

# Hélène's Post



**Hélène Volat**

Feb 18 · 

I am receiving abusive and derogatory messages on Messenger from a certain Louis Yoelin including several attempts to call me. I have reported him to FB and to his University. To think that this sicko is apparently a professor at DePaul University!



20 comments   1 share

 Like         Share

**Comments**     Done

 ✒️ **Author**
**Hélène Volat**
David Ben Mark as it turned out he is no a professor at DePaul but an adjunct at another small university which I contacted. Never mess with a research librarian!

6d   Like     3 

 **Raiford Guins**
Un-fucking-believable

1w   Like     1 

 **Drew Goldstein**
Sorry this is happening, if I can help, let me know.

1w   Like     1 

 **Pat Bendery**
Can you report this to the school he works at? This is harrassment.

6d   Like

 ✒️ **Author**
**Hélène Volat**
Pat Bendery Just did. The cherry on the cake is that he is not a "professor" at DePaul but an adjunct in a small university. I contacted his Chair who answered. "Professor" Yoelin may be in trouble ...

6d   Like     3 

 **Alec Dubro**

dePaul University.



Louis Yoelin

outlook.office.com/mail/id/AAMkAGNhYZA0ZjQxLTkxMDAtNDcwNC05ZjFjLWRlOGJhYTE5MDdjYwBGAAAAAACTNq9uBbOq8Qr3p%2FwL0%2BS9...

Home    View    Help

All folders ⌄    From: David DeVasto ✕

☐ New mail

⌄ Favorites

⌄ Folders

☐ Inbox    1711
✎ Drafts    61
△ Sent Items    1
🗑 Dele...    5345
⊘ Junk Email
☐ Archive
☐ Notes
☐ Clutter    226
☐ Conversati...

Create new...

Mail    Files

David DeVasto
Re: songwriting class    4/15/2023
As we start thinking about this ...    Inbox

David DeVasto
Re: songwriting class    4/14/2023
Hi Lou, You as well! Here is the ...    Inbox
📄 Fine Arts Propo...  📄 Course Proposa...

David DeVasto
Composer Workshop Deadli...    12/6/2022
Hi Comp Faculty, I have yet to r...    Inbox

David DeVasto
Composers Workshop - 12/1...    12/1/2022
Hello Comp Faculty, I wanted t...    Inbox

David DeVasto
Re: Comp Seminar - Minor in    8/30/2021

Q Type here to search

Quick steps ⌄    ◇ Read / Unread ⌄

📄 Fine Arts Proposal Form_May...  ⌄    📄 Course Proposal Form-1 (1).d... ⌄
                                           19 KB

2 attachments (114 KB) ⊙ Save all to OneDrive - Elmhurst University   ↓ Download all

Thank you!    Sounds great, thank you!    Great, thank you so much!

Hi Lou,

You as well! Here is the course proposal form for new courses. Once completed, members of music department curriculum committee will suggest revisions or approve, then it gets sent to academic council for approval and finally voted on by the faculty.

Once approved, the course will go into effect for the '24-'25 academic year.

I'd be glad to talk through the proposal and specifics of the course after things settle down in mid May.

Thanks,
David-

David M. DeVasto, Ph.D.
Associate Professor
Music Theory and Composition
Elmhurst University
190 Prospect Avenue
Elmhurst, IL 60126
(630) 617-3529
devastod@elmhurst.edu

From: Louis Yoelin <louis.yoelin@elmhurst.edu>
Sent: Thursday, April 13, 2023 9:42 AM
To: David DeVasto <devastod@elmhurst.edu>
Subject: songwriting class

David,

It was great seeing you yesterday. I like your idea for the songwriting class. What's my next step to get the ball rolling for that?

🌤 79°F Mostly sunny    ⌃ ◁◑    9:43 AM
                                    6/30/2023



**Re: songwriting class**

You replied on Sun 4/16/2023 6:01 PM

David DeVasto
To: Louis Yoelin

As we start thinking about this course, I'm curious where you took the songwriting course and what textbook(s) did you use? It seems like there is a lot of history that would be good to cover as well as a bit of music theory and lyric writing...really a complex task when you think about it!

David M. DeVasto, Ph.D.
Associate Professor
Music Theory and Composition
Elmhurst University
190 Prospect Avenue
Elmhurst, IL 60126
(630) 617-3529
devastod@elmhurst.edu

From: Louis Yoelin <louis.yoelin@elmhurst.edu>
Sent: Thursday, April 13, 2023 9:42 AM
To: David DeVasto <devastod@elmhurst.edu>
Subject: songwriting class

David,
It was great seeing you yesterday. I like your idea for the songwriting class. What's my next step to get the ball rolling for that?
-Lou

Reply | Forward

---

**Mail** | Files

David DeVasto
Re: teaching
Hi Lou, I am very sorry to hear ...
Fri 6/16
Inbox

David DeVasto
Automatic reply: teaching
Hello, Thank you for contacting...
Tue 6/13
Inbox

David DeVasto
**Re: songwriting class**
Hey Lou, Sorry for the belated r...
4/27/2023
Inbox

David DeVasto
Re: songwriting class
As we start thinking about this ...
4/15/2023
Inbox

David DeVasto
Re: songwriting class
Hi Lou, You as well! Here is the ...
4/14/2023
Inbox



## Re: songwriting class

David DeVasto • Associate Professor, Music Dept at Elmhurst University) View profile

**David DeVasto**
To: Louis Yoelin

Hey Lou,

Sorry for the belated response. It's great to hear your thoughts on this. I think this history is also an important component - and I love your idea of 'commercial songwriting' being the focus. As for the paperwork - leave the number blank for now but reach out with any questions as you brainstorm!

Thanks,
David-

David M. DeVasto, Ph.D.
Associate Professor
Music Theory and Composition
Elmhurst University
190 Prospect Avenue
Elmhurst, IL 60126
(630) 617-3529
devastod@elmhurst.edu

From: Louis Yoelin <louis.yoelin@elmhurst.edu>
Sent: Sunday, April 16, 2023 6:01 PM
To: David DeVasto <devastod@elmhurst.edu>
Subject: Re: songwriting class

I approached the lessons from an industry, professional direction. If I had it my way, I'd call the class "commercial songwriting." I focused largely on teaching and implementing the techniques and methods that go into crafting great, commercial songs that are timeless and transcend all times and styles of songwriting. Essentially adapting to any style of songwriting as the art form

**To Matt**, My fellow Eagle Scout, Roommate, Comp Partner, and Friend. I couldn't have imagined these past four years without you, from the first time we met in Streder's theory class, to making a Stockhausen presentation, then living together, and finally you agreeing to be my Big Foot. It's not only been a joy and a privilege to call you my friend, but something I will always hold dear to me. Thank you for your friendship and support!

**To Lou**, it's hard to think that four years ago I decided to change majors out of the blue and take lessons with a professor I never met, and that it would lead to this. I truly need to thank you for your continued support and help as I developed as a composer. producer, etc. It's been wonderful getting to work and study with you these past four years and I truly wouldn't have been able to do this without you.

**To Lori-Ann**, where do I begin, I think if a year ago you didn't keep pushing me to write these silly little songs my capstone would look a lot different. Not only have you helped me through the entire process, but your love and support has kept me mostly sane (I don't think this would've happened if I was completely sane) and kept me pushing the scope of the project to become the insanity that it is. Thank you for everything (including the poster design!) but more importantly for your love and support.

**To my Parents**, for always allowing me to pursue whatever I set my heart on. Without the two of you I would be beyond lost, and the amount of love, support, and guidance I have received form the two of you will take more than a lifetime to repay. Thank you for believing in me and pushing me to be the best I can be. I am not only glad, but proud to be your son; thank you for everything.

Lou,



I hope you are enjoying summer and have plans to do some fun things.

I am unfortunately contacting you to inform you that we will not have a class or lessons for you to teach this next year in the Music Department at Elmhurst University. The university allowed us to hire a new full-time music theory and composition professor starting this next academic year. I am currently in the process of completing load sheets and teaching schedules for next year and the new person will be covering your classes, lessons and additional classes.

I am very sorry to inform you of this decision, but we will retain your name and contact information should the opportunity arise to once again utilize your talents and expertise.

Thank you for your time and the guidance you have provided for our Elmhurst music students.

Sincerely,

RE: Retainer Agreement - hyoelin ✕ | Registration and Records | Elmh ✕ | Course Catalog - Ellucian Stude ✕ | +

ss.elmhurst.edu/Student/Courses/Search

| Term | Status | Section Name | Title | Dates | Location | Instructional Methods | Meeting Information | Faculty | Availab |
|------|--------|-------------|-------|-------|----------|----------------------|--------------------|---------|---------|
| Fall Term 2023 | Open | AMB-302-04 +$ | Brass | 8/28/2023-12/16/2023 | | Lecture | | O'Hara, Christopher J. | 18 / 2 |
| Fall Term 2023 | Open | AMB-302-11 +$ | Brass | 8/28/2023-12/16/2023 | | Lecture | | Mayne, Anna F. | 20 / 0 |
| Fall Term 2023 | Open | AMB-302-14 +$ | Brass | 8/28/2023-12/16/2023 | | Lecture | | O'Hara, Christopher J. | 1 / 0 / |
| Fall Term 2023 | Open | AMC-011-01 +$ | Non-Credit Composition | 8/28/2023-12/16/2023 | | Lecture | 8/28/2023 - 12/16/2023 TBD (LEC) | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-011-03 +$ | Non-Credit Composition | 8/28/2023-12/16/2023 | | Lecture | | DeVasto, David M. | 20 / 0 |
| Fall Term 2023 | Open | AMC-011-04 +$ | Non-Credit Composition | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 20 / 0 |
| Fall Term 2023 | Open | AMC-022-01 +$ | Non-Credit Film Scoring | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-041-01 +$ | Non-credit Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-041-03 +$ | Non-credit Songwriting | 8/28/2023-12/16/2023 | | Lecture | | | 20 / 0 |
| Fall Term 2023 | Open | AMC-041-04 +$ | Non-credit Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 20 / 0 |
| Fall Term 2023 | Open | AMC-100-01 +$ | Composition Seminar | 8/28/2023-12/16/2023 | | Lecture Final Exam | W 6:30-7:30 PM 8/28/2023 - 12/9/2023 IH 200 (LEC) W 6:30-7:30 PM 12/11/2023 - 12/16/2023 IH 200 (FE) | Dorhauer, John J. | 13 / 7 |
| Fall Term 2023 | Open | AMC-100-11 +$ | Composition Seminar | 8/28/2023-12/16/2023 | | Lecture Final Exam | W 6:30-7:30 PM 8/28/2023 - 12/9/2023 IH 200 (LEC) | Dorhauer, John J. | 13 / 7 |

79°F Sunny    11:03 AM 7/19/2023

Type here to search



ss.elmhurst.edu/Student/Courses/Search

Course Catalog - Ellucian Studio

| Term | Status | Section Name | Title | Dates | Location | Instructional Methods | Meeting Information | Faculty | Availab |
|------|--------|--------------|-------|-------|----------|----------------------|--------------------|---------|---------|
| | | | | | | Final Exam | 8/28/2023 - 12/16/2023<br>IH 200 (LEC)<br>W 6:30-7:30 PM<br>12/11/2023 - 12/16/2023<br>IH 200 (FE) | | |
| Fall Term 2023 | Open | AMC 202-01 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 19 / 1 |
| Fall Term 2023 | Open | AMC 202-03 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | DeVasto, David M. | 18 / 2 |
| Fall Term 2023 | Open | AMC 202-04 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 19 / 1 |
| Fall Term 2023 | Open | AMC 222-01 +$ | Film Scoring | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 19 / 1 |
| Fall Term 2023 | Open | AMC 242-01 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC 242-03 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | | 20 / 0 |
| Fall Term 2023 | Open | AMC 242-04 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 20 / 0 |
| Fall Term 2023 | Open | AMC 300-01 +$ | Composition Seminar | 8/28/2023-12/16/2023 | | Lecture<br>Final Exam | W 6:00-7:00 PM<br>8/28/2023 - 12/16/2023<br>IH 111 (LEC)<br>8/28/2023 - 12/16/2023<br>TBD (FE) | Dorhauer, John J. | 13 / 7 |
| Fall Term 2023 | Open | AMC 300-11 +$ | Composition Seminar | 8/28/2023-12/16/2023 | | Lecture<br>Final Exam | W 6:00-7:00 PM<br>8/28/2023 - 12/16/2023<br>IH 111 (LEC)<br>8/28/2023 - 12/16/2023<br>TBD (FE) | Dorhauer, John J. | 13 / 7 |

Type here to search

79°F Sunny

11:04 AM
7/19/2023

507)



| Term | Status | Section Name | Title | Dates | Location | Instructional Methods | Meeting Information | Faculty | Availab |
|------|--------|--------------|-------|-------|----------|----------------------|--------------------|---------|---------|
| | | | | | | Final Exam | 8/28/2023 - 12/16/2023 IH 111 (LEC) 8/28/2023 - 12/16/2023 TBD (FE) | | 13 / 7 |
| Fall Term 2023 | Open | AMC-300-11 +$ | Composition Seminar | 8/28/2023-12/16/2023 | | Lecture | W 6:00-7:00 PM 8/28/2023 - 12/16/2023 IH 111 (LEC) | Dorhauer, John J. | |
| | | | | | | Final Exam | 8/28/2023 - 12/16/2023 TBD (FE) | | |
| Fall Term 2023 | Open | AMC-302-01 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-302-03 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | DeVasto, David M. | 20 / 0 |
| Fall Term 2023 | Open | AMC-302-04 +$ | Composition | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 20 / 0 |
| Fall Term 2023 | Open | AMC-322-01 +$ | Film Scoring | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-342-01 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-342-03 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Rodriguez-Barnett, Joshua E. | 20 / 0 |
| Fall Term 2023 | Open | AMC-342-04 +$ | Songwriting | 8/28/2023-12/16/2023 | | Lecture | | Dorhauer, John J. | 20 / 0 |

Page 2 of 58

ss.elmhurst.edu/Student/Courses/Search

RE: Retainer Agreement - lyoelin
Registration and Records | Elmh:
Course Catalog - Ellucian Stude

79°F Sunny    11:04 AM 7/19/2023

# DISPARTI
## —— Law Group ——



www.DispartiLaw.com

Mailing Address:
121 West Wacker Drive, Suite 2300
Chicago, IL 60601

Phone: (312) 506-5511
Fax:    (312) 846-6363

November 7, 2023

**Via Email and EEOC portal**
Eva Baran, Investigator
EEOC Chicago District Office
JCK Federal Building
230 S. Dearborn Street, Suite 1866
Chicago, IL 60604

**RE: Lou Yoelin's Position Statement and Documents, Yoelin v. Elmhurst University, EEOC
Charge No. 440-2023-09498**

Dear Investigator Baran:

Lou Yoelin ("Yoelin") previously filed a religious discrimination charge (Charge No. 440-2023-09498) with the EEOC on August 21, 2023. This constitutes Yoelin's position statement that you requested he provide in support of his EEOC charge.

## Yoelin's Rebuttal to Elmhurst University's Position Statement

As Yoelin's 11-year career as an Adjunct Professor with Elmhurst University ("Elmhurst") was marked by excellence, it is no coincidence that his annual teaching contract was not renewed after being targeted for his work in antisemitic advocacy. This targeting by various hate groups rose to a new level, notably, when slanderous communications by such hate groups were shared with Yoelin's direct supervisor at Elmhurst, Dr. James Hile ("Hile"). Shortly thereafter, Hile informed Yoelin that he would not be teaching for the next academic year.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2012).

A plaintiff alleging discrimination under Title VII may prove discrimination using either the direct method, by proffering direct or circumstantial evidence that discrimination motivated the adverse employment decision, or the indirect, burden-shifting method. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849–50 (7th Cir.2008); *Miller v. Ind. Univ. Health, Inc.*, No. 1:12–CV–1667–TWP, 2014 WL 4259628, at *4 (S.D.Ind. Aug. 29, 2014). *Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 916 (S.D. Ind. 2016).

Under the indirect method of proof, a *prima facie* case of discrimination requires a showing that: "(1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate

employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a "similarly situated" non-protected class member." *Andonissamy*, 547 F.3d at 849–50; *Velez v. City of Chi.*, 442 F.3d 1043, 1049–50 (7th Cir.2006). "A similarly-situated employee is one whose performance, qualifications, and conduct are comparable in all material respects." *Boss v. Castro,* 816 F.3d 910, 917 (7th Cir. 2016).

To establish a *prima facie* case, a plaintiff must raise a genuine issue of material facts for each element. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir.1995). Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir.2007). If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the defendant's explanation is pre-textual. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir.2012).

In this case, Yoelin self identifies as a man of Jewish faith. Throughout his career with Elmhurst, not only did he receive exemplary reviews from both the former Chair of the Music Department, but also was regularly praised by his students for his work. As a result, Yoelin's teaching contract was regularly renewed each academic year -- like the majority of music professors employed at Elmhurst. Based on Yoelin's knowledge and belief, approximately 95% of faculty employed within the music department at Elmhurst are employed in an adjunct capacity so require term-to-term contracts. Apart from teaching at Elmhurst, Yoelin regularly advocated against antisemitism and antisemite groups via his online participation on various antisemite websites, including volunteering for a non-profit organization called "[1]Fighting Online Antisemitism." In doing such work, Yoelin regularly defended the Jewish faith and worked to battle antisemitism. In response, various hate groups attacked Yoelin for his advocacy efforts.

Notably, in or about February 2023, Yoelin was again targeted by various hate groups when they directed slanderous messages to his direct supervisor, Hile, via email – all in an attempt to smear Yoelin's reputation and adversely affect his employment with Elmhurst. Subsequently, on or about June 12, 2023, Yoelin was notified that he would not be invited back to teach the following academic year at Elmhurst. In response, Yoelin was shocked at such news as he had been invited back to teach for the previous eleven years while at Elmhurst. It was then that Yoelin had inquired further about the February 2023 harassing communications that were sent to Hile by the various hate groups in an attempt to attack Yoelin. In reply, Hile admitted that he did, in fact, receive such emails but refused to share the specific content of those emails with Yoelin. Overall, the reason provided by Elmhurst for Yoelin's contract non-renewal was merely pretextual that must now be analyzed further.

### The Past Work Experience and Qualifications of Yoelin's Replacement are Significantly Less as Compared to Yoelin's 11-Year Teaching Career and Job Qualifications

Elmhurst argues that "with the addition of a new full-time tenure track music theory and composition faculty member with a doctoral degree…the University no longer required Yoelin's

---

[1] *See*: https://foantisemitism.org/

part-time teaching support for these types of applied music lessons." However, upon closer inspection, the individual who replaced Yoelin was that of Mr. Joshua Rodriguez ("Rodriguez").

The U.S. Supreme Court has held in *Ash v. Tyson Foods*, 546 U.S. 454, that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *See Patterson v. McLean Credit Union*, 491 U.S. 164, 187-188 (1989); *Texas Dep't of Community Affairs v. Burdien*, 450 U.S. 248, 259 (1981); *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) ("disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question"); *Raad v. Fairbanks North Start Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are 'clearly superior' to those of the selected applicant.); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (factfinder may infer pretext if a reasonable employer would have found the plaintiff to be significantly better qualified for the job).

Here, while it may be true that Rodriguez holds a Master of Music degree and a Ph.D in music composition, upon information and belief of Yoelin, Rodriguez' professional experience is wholly lacking as compared to that of Yoelin's professional career and job qualifications. Since 2005, Yoelin has been writing songs for TV shows, films, video games and commercials. As one of the leading songwriters and composers for TV shows and films, his songs have been in over 1,000 TV shows including "Criminal Minds," "How I Met Your Mother," "American Idol," "The Voice," "The Kardashians," "The Olympics," and many more. *See* **Exhibit 1.** In comparison, Rodriguez does not have a professional background in songwriting or film scoring post-college[2].

It is also important to mention that Yoelin, as an Adjunct Professor of Songwriting and Film Scoring (under the departmental umbrella of Music Theory and Composition at Elmhurst), was not solely teaching music theory and composition. He was mostly responsible for teaching songwriting and film scoring. Yoelin also taught music at UCLA and Pasadena City College prior to teaching at Elmhurst. In comparison to Yoelin who has a wide breadth and variety of experience, Rodriguez does not have any experience teaching film scoring or teaching songwriting, based upon information and belief of Yoelin. However, despite not having any experience in these areas, he replaced Yoelin. As a whole, being a talented musician does not necessarily equate to being an effective and exemplary teacher. In essence, Yoelin -- with over 11 years of experience in teaching music -- was replaced by someone that had virtually little to no teaching or professional experience.

### Elmhurst's Tone-Deaf Characterization of Yoelin's Advocacy Work

Elmhurst also contends that "the University's receipt of communications Yoelin had circulated regarding responses to antisemitism and his aggressively personal questions to a stranger did not cause his non-renewal." Overall, Elmhurst's characterization of Yoelin's online activities as **aggressive** demonstrates Elmhurst's tone-deaf mindset to the larger issue of antisemitism throughout the world today. Furthermore, Elmhurst claims that no slanderous messages were directed towards Yoelin. However, as outlined in Yoelin's EEOC charges, his voluntary work

---

[2] https://www.joshrodriguezmusic.com/

aimed to combat antisemitic propaganda on social media. As part of his role in taking a stand against antisemitic propaganda on social media, Yoelin responded to aggressively antisemitic posts on a regular basis. For the broader community and particularly for Jewish individuals, it can be deeply distressing to encounter and ignore antisemitic posts, to which Yoelin was responding to. As a man of Jewish faith and as a member of the Jewish religious community, Yoelin was directly affected by the harmful online attacks against the Jewish community.

Moreover, Yoelin received direct threats by various hate groups that threatened his employment. Notably, a social media user commented in or about February 2023 in a Facebook post that she contacted Yoelin's Chair at Elmhurst and publicly commented that "*Professor Yoelin may be in trouble*" … implying that the reported incident would impact Yoelin's career, which indeed it **DID**. Furthermore, on June 23rd, 2023, Yoelin requested that Hile share the copies of such emails as received by Elmhurst regarding Yoelin's antisemitism advocacy on social media. However, Hile declined to share this correspondence with Yoelin. *See* **Exhibit 2.**

Overall, Elmhurst's characterization of Yoelin's alleged messages as **"aggressive"** combined with Elmhurst's refusal to disclose those cited emails concerning complaints against Yoelin, further demonstrate that Elmhurst lacked a non-discriminatory purpose when electing not to renew Yoelin's teaching contract, despite having done so for the past 11 years.

## Conclusion and Remedies Sought

Overall, Yoelin reasserts his allegations that he was subject to discrimination by Elmhurst on account of his religious belief and participation in the Jewish faith. As a whole, Yoelin's long standing 11 years of teaching experience in contrast to his replacement who had little to no teaching experience, coupled with Hile's refusal to share the cited email correspondence in question, and Elmhurst's characterization of Yoelin's tone – deaf advocacy against antisemitism, strongly support the inference that Yoelin's teaching contract was not renewed due to his religious belief and participation in Judaism. Overall, the cited basis that Elmhurst provides that Yoelin's "part-time and as-needed instruction was no longer needed," is nothing more than an attempt to mask and legitimize this purely discriminatory act.

For the foregoing reasons, Yoelin has demonstrated an actionable religious discrimination claim under Title VII. Presently, Yoelin seeks reinstatement, backpay, back benefits and all other relief as required under law.

Respectfully submitted,

LOU YOELIN

*/s/ Nicollette M. Haines*

By: _____

Nicollette M. Haines, Esq.
Attorney for Lou Yoelin

*Nicollette M. Haines, Esq.*
Disparti Law Group
121 W. Wacker Drive – Suite 2300
Chicago, IL 60601
P: (312) 506-5511 ext. 334
F: (312) 846-6363
E: nicollette@dispartilaw.com

# Louis Yoelin

**Exhibit 1**

www.LouisYoelin.com



## Experience: Music Industry

Use of Original Compositions:
**CBS**-"How I Met Your Mother," "Criminal Minds," "Young And The Restless"
**NBC**-"Days Of Our Lives," "Major League Baseball," "Passions"
**FOX**-"The Dr. Oz Show," "NCAA Football," "Major League Baseball," "NFL Football"
**ABC**-"NFL Monday Night Football," "Greek," "10 Things I Hate About You"
**E!**-"Keeping Up With The Kardashians," "Kim And Khloe Take Miami," "E! News"
**MTV**-"Jersey Shore," "The Real World," "Road Rules," "Made," "Girl Code," "Ridiculousness"
**CABLE**-"Bad Girls Club," "Dance Moms," "Real Housewives Of Miami," "Storage Hunters"
**THEME SONGS**-E! "Storage Hunters," Food Network "Mystery Diners," Comedy Central "Workaholics."
**Walt Disney Records**-"Shelby Cobra"
**RCA Records**-"B.C. Jean"
**Hollywood Records**-"Valora"

## Experience: Business

**Fat Sound Music LLC**-CEO: music publishing company
**Operation Popstar LLC**-CEO: music artist development company

## Awards

**2018** The International Songwriting Competition

**2017** John Lennon Songwriting Competition

**2013** Hollywood Music And Media Award

**2007** Suncal Songwriting Contest

**2006** Song Of The Year compeition

**2004** Song Of The Year compeition

## Experience: Teaching

| | |
|---|---|
| *2012- 2023* | Adjunct Faculty, Elmhurst University, taught songwriting and film scoring, Elmhurst, Il |
| *2011* | Guest lecture, Loyola University, Chicago, Il, Columbia College Chicago, Chicago, Il |
| *2007* | Adjunct Faculty, Pasadena City College, taught advanced music theory, Pasadena, CA |
| *2007* | Teacher, after-school program, Hawthorne Elementary School District, Hawthorne, CA |
| *2004 2005* | Teaching assistant, music theory/music technology, University of California, Los Angeles |
| *2004* | Private lessons in songwriting, music production, music theory, composition, percussion |

## Education

| | |
|---|---|
| *2005* | Master of Arts, Music Composition, University of California, Los Angeles |
| *2003* | Composition mentorship with Pulitzer prize-winner Augusta Read Thomas |
| *2002* | Bachelor of Arts, Music Composition, Columbia College, Chicago, Illinois |

## Computer Fluency

Pro Tools

Logic

Sibelius

Microsoft Office

Macintosh

Windows

**Exhibit 2**



Lou,

You should also truly be proud of your work here and particularly with Kris. I attended the capstone performance of his mini opera "Bigfoot" and I was amazed at the variety of styles and the craftsmanship he put into it. You, as his teacher for four years, should be commended for his growth and accomplishments as well as for all your students.

I did receive reports of some of your communications related to your efforts to work against antisemitism from individuals outside the university. I want to reaffirm that the addition of a new full-time, tenure-track music theory and composition professor to our faculty created the situation where we do not have classes or lessons for you to teach this next academic year.

You should have received a phone message from Kate in the office about returning your keys and access card to the Public Safety Office which is open 24/7. If you have not yet done this, please do so at your earliest convenience.

Thank you for your eleven of service to the university and the guidance you have provided for our Elmhurst music students.

Sincerely,

Jim

James Hile, Ed.D.
Interim Chair, Music Department
Director of Bands
Elmhurst University
630 - 617 - 3520

From: Louis Yoelin <lou.t.yoelin@elmhurst.edu>
Sent: Wednesday, June 21, 2023 2:46 PM
To: James Hile <james.hile@elmhurst.edu>
Subject: Re: Teaching Next Academic Year



Jis Yoelin  Outlook        x    +

wNC0SZjFjLWRlOGJhYTESMDdjYwBGAAAAAACTNq9uBbQ8Qr3p%2FwL0 ...

Teams call                                    Louis Yoelin

Forwarding

Quick steps    Read / Unread

Filter        **Re: Teaching Next Academic Year**

James Hile
To  Louis Yoelin

Hi Lou,

I must decline your request, as I'm not in the habit of sharing emails I receive from others, especially when they do not relate to any work-related decisions. I hope you can understand that.

Jim

James Hile, Ed.D.
Interim Chair, Music Department
Director of Bands
Elmhurst University
630 - 617 - 3520

From: Louis Yoelin <louis.yoelin@elmhurst.edu>
Sent: Friday, June 23, 2023 3:21 PM
To: James Hile <james.hile@elmhurst.edu>
Subject: Re: Teaching Next Academic Year

James,
Please forward me copies of all emails to and from those individuals outside the university related to my antisemitism advocacy on social media that you mentioned. Thank you.
-Lou

From: James Hile <james.hile@elmhurst.edu>

Earnings upcoming              4:26 PM
                               6/27/2023

Known for his energetic rhythms, rich harmonic language, and striking colors, Colombian-American composer Josh Rodríguez (b. 1982) continues to gain recognition as an emerging composer and collaborator on a national and international scale. Born in Argentina and raised in Guatemala, Mexico, and the United States, Rodríguez's musical imagination has been formed by this bilingual multicultural heritage.

Rodríguez collaborates regularly with theatre and film directors and has received notable concert commissions in a wide range of musical genres: works include *Dos Palabras*, which won the Inaugural Springfield Chamber Chorus Composition Competition (2022) and is available on Spotify/iTunes, *When Stone Becomes Forest* (Winner of THE AMERICAN PRIZE - Professional Band Division 2022), *Partita Picosa* (a 5-movement piece for solo piano), *Contra Spem Spero* (violin chamber concerto), and That Crazed Girl Improvising (piano trio), all which were finalists for the AMERICAN PRIZE (*TIKAL*, for concert band received *Honorable Mention*, 2021).

He's written numerous choral works, music for jazz trio and big band, original scores for Courtyard Shakespeare Festival's productions of *Hamlet* (2019), *Much Ado About Nothing* (2022), *Richard III* (2022), and *Rosencrantz and Guildenstern are Dead* (2019), and CBU Theatre's productions of *Love's Labour's Lost* (2020) and *She Stoops to Conquer* (2021). In addition to concert and theatre music, Rodríguez has scored numerous film projects (recently Shakespeare's THE TEMPEST by Rebel Run Studios), several of which have appeared in international film festivals and received special awards.



Rodríguez (ASCAP) is composer-in-residence of the Corona Symphony Orchestra, and currently serves as Associate Professor of Music Theory and Composition at the Elmhurst University. He regularly contributes to various arts & culture blogs and is on the Leadership Team of Deus-Ex-Musica an initiative that brings musicians, clergy, and non-musicians together for concerts and conversations about the intersection of faith and new music.

Rodríguez earned his MM at the Cleveland Institute of Music and upon winning the Eugene V. Cota-Robles Fellowship moved west to study a doctorate at the University of California, Los Angeles. His research at UCLA culminated with his dissertation on Argentine composer Alberto Ginastera.

Rodríguez' music can be purchased through J W PEPPER, NORTH STAR MUSIC, WALTON, and through the CONNECT form.



# HUSCH BLACKWELL

Peter Land
Attorney

120 South Riverside Plaza, Suite 2200
Chicago, IL 60606-3912
Direct: 312.526.1631
peter.land@huschblackwell.com

October 3, 2023

Eva Baran
Investigator
U.S. Equal Employment Opportunity Commission
230 S. Dearborn Street
Chicago, IL 60604

<table>
<tr><td><b>Re:</b></td><td><b>Charge Number:</b></td><td><b>440-2023-09498</b></td></tr>
<tr><td></td><td><b>Charging Party:</b></td><td><b>Lou Yoelin</b></td></tr>
<tr><td></td><td><b>Respondent:</b></td><td><b>Elmhurst University</b></td></tr>
</table>

Dear Eva Baran:

This letter will serve as the position statement of Respondent Elmhurst University ("Elmhurst" or the "University") in response to the claim asserted by Charging Party Lou Yoelin ("Mr. Yoelin") in the above-referenced Charge.[1] Mr. Yoelin alleges that he was discriminated against and that his teaching arrangement was not renewed in the Fall 2023 academic term as a result of his religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

The University strongly denies all of Mr. Yoelin's allegations. As described in detail below, Mr. Yoelin was not assigned teaching responsibilities during the 2023-2024 academic year because his part-time and as-needed instruction was no longer required. As such, the University had legitimate and non-discriminatory reasons for not renewing employment of the Charging Party. For the reasons set forth below, the Charge should be dismissed.

## I.    BACKGROUND

Elmhurst University is a leading four-year institution of higher education that seamlessly blends liberal learning and professional preparation to help students reach their full potential.

---

[1] This position statement is based on the undersigned's knowledge of the facts at the time of this submission. The University in no way waives its right to present new or additional facts or arguments based on subsequently acquired information or evidence. Further, this position statement, while believed to be true and correct in all respects, does not constitute an affidavit and is not intended to be used as evidence of any kind in any Commission, administrative, or court proceeding in connection with the above-referenced Charge.

# HUSCH BLACKWELL

Founded in 1871, Elmhurst now offers more than 70 undergraduate programs of study, more than 20 graduate and certificate programs in flexible formats, and the Elmhurst Learning and Success Academy for young adults with differing abilities. Elmhurst University is among the top-ranked colleges and universities in the Midwest, according to U.S. News & World Report.

Recruiting and retaining a diverse workforce is a critical component of the University's mission, vision and core values. Our commitment stems from the belief that an institution of higher learning is enriched by the presence of diversity. Elmhurst University is an EO Employer. Elmhurst University prohibits discrimination and harassment of any type and affords equal employment opportunities to employees and applicants without regard to race, color, national origin, gender, sexual orientation, religion, age, creed, ancestry, veteran status, marital status, disability, or any other characteristic protected by law.

Mr. Yoelin began working with the University in August 2012 as an adjunct faculty member in the Department of Music (the "Department") for teaching applied music lessons, particularly in music theory and composition (as opposed to techniques for specific instruments). Applied music lessons are offered to individual students as part of the Department's curriculum, and are not the same as traditional courses that are instructed by traditional adjunct faculty members. Applied music adjunct faculty members are assigned a small number of students to provide music lessons throughout an academic term. While it is true that Mr. Yoelin instructed three traditional courses in total during his time working with the University (one during Fall 2019, Spring 2020, and Fall 2020), his primary duties were to provide applied music lessons as needed, and on a term-to-term basis. He had not taught a traditional course since 2020. Applied music adjunct faculty members are at-will and part-time employees. Mr. Yoelin provided applied music lessons for 33 students in total between August 2012 and August 2023 and received pay for varying amounts of assigned work each academic term.

## II. NON-RENEWAL OF MR. YOELIN'S APPOINTMENT

Elmhurst University employs part-time adjunct faculty members in many areas on a term-to-term basis, but the nature of applied music adjunct faculty is unique, as noted previously. Workload associated with these positions is variable, in that the number of students who require various types of applied music lessons can vary by academic term and the students' areas of focus.

On June 12, 2023, James Hile ("Dr. Hile"), Chair of the Department of Music, emailed Mr. Yoelin to explain that a new full-time, tenure track professor of music theory and composition would be joining the Department in the upcoming 2023-2024 academic year and providing applied music lessons. As a result, the Department would no longer have applied music lessons in theory and composition for Mr. Yoelin to teach this year. In this same email, Dr. Hile stated that the Department would retain Mr. Yoelin's contact information should an opportunity for him to work arise again in the future. With the addition of a new full-time, tenure-track music theory and composition faculty member with a doctoral degree in the Department during 2023, the University no longer required Mr. Yoelin's part-time teaching support for these types of applied music lessons.

2

## HUSCH BLACKWELL

### III.    ABSENCE OF DISCRIMINATION

The assertions of religious discrimination in the Charge are unsupportable given the staffing changes described above that led to non-renewal of Mr. Yoelin's part-time appointment, which had nothing to do with religion.

Indeed, upon learning of the staffing changes that resulted in the non-renewal of his part-time appointment, Mr. Yoelin responded that his years of teaching at Elmhurst had been great. He also expressed concerns that some individuals outside the University had emailed slanderous messages about him to Dr. Hile in hopes of hurting his job with the University. Dr. Hile commended Mr. Yoelin for his work in detail and explained that, while he had received some external communication related to Mr. Yoelin's work against antisemitism, the addition of the new full-time, tenure-track professor created a situation such that the Department did not have applied music lessons for Mr. Yoelin to teach as had initially been explained to him.

Moreover, the University's receipt of communications Mr. Yoelin had circulated regarding responses to antisemitism and his aggressively personal questions to a stranger did not cause his non-renewal. Those messages were received in February 2023 (see example attached as Appendix A), and Mr. Yoelin continued to teach applied music lessons to his three students throughout the Spring 2023 term. His appointment was only not renewed four months later, after the University hired a full-time, tenure-track professor who specializes in music theory and composition, and who could naturally handle applied music lessons in this same discipline. The Department has typically had three theory and composition instructors for applied lessons at any given time for a limited number of students who are composition majors. One of these instructors is an existing full-time and tenured faculty member, and one is a traditional adjunct who teaches several full semester courses and a seminar in theory and composition. We wanted to offer students the opportunity to take applied music lessons in theory and composition with the new full-time faculty member, given their expertise in this area. Mr. Yoelin's Charge claims that his replacement has little to no prior experience in music, which is simply not true. The new full-time, tenure-track professor holds a Master of Music degree and a Ph.D. in music composition, and served as a full-time professor of music theory and composition at another institution prior to joining Elmhurst University.

Furthermore, the Charge inaccurately claims that slanderous messages were directed at Mr. Yoelin as a result of his volunteer work that focused on fighting antisemitism online and shared with Dr. Hile for the purpose of jeopardizing his employment, all on account of the fact that he is Jewish and defended his religion. A review of the messages themselves (in Appendix A) clarifies that no slanderous messages were directed at Mr. Yoelin. Instead, the external report to Dr. Hile contained copies of communications that Mr. Yoelin himself directed at or sent to the reporting individuals.

Additionally, there are no other known records of any type of discrimination claims against Elmhurst University as a result of an employee's Jewish faith or defense of such faith. The University celebrates all faiths and those of no faith, has celebrated Jewish holidays on

# HUSCH BLACKWELL

campus, and has a Jewish co-chaplain.

### IV.    CONCLUSION

For the reasons set forth above, it is clear that Mr. Yoelin was not discriminated against on any basis (including disability status, age, sex, gender, or religion). Rather, Mr. Yoelin's services were no longer required following full-time faculty staffing changes. The University acted lawfully, and as a result, the Charge should be dismissed in its entirety.

Please contact me if additional information is required.

Sincerely,

Peter Land
Attorney

4